Patrick Hooper for Victor Valley Community Hospital. May it please the court. We are here because we are asking this court not to review the decision of the agency at this time, but to stay the effect of the agency decision until the departmental appeals board issues a ruling. We would not be here at this time if it were not for the fact that the administrative law judge's decision has gone into effect absent the stay that this court has issued. Let me ask you first about your administrative remedies on stay. Do you have, do you believe you have administrative remedies? In other words, could you ask the I not only did it informally by asking early on counsel for the Department of Health and Human Services, but I did it more formally, and I believe this is in my declaration, but I'm not certain, by actually going to the departmental appeals board appellate division and asking them to stay it. And they similarly refused that. Okay. Go ahead. In any event, I would like to reserve about five or six minutes, if I can. We think this is fairly clear. Congress created a statute that said when Well, before you get into that, let me ask one other preliminary question that may be obvious to you. But if, is our, do you believe that the court should have some kind of jurisdiction to be able to, to stay an agency that is not in the primary jurisdiction? That's a very interesting question, Your Honor. And I haven't seen cases that ever distinguish that, that Mr. Cavell and I were talking about that several times and including this morning. I believe, but I haven't seen case law that there should be a slight distinction in that regard. I believe that the court should have some kind of jurisdiction to be able to, to stay an agency proceeding that may be less than the jurisdiction to review. And it would be similar to like a, I forget the jurisdictional grounds in the, in the district court, like an all-writs act kind of review. But I don't think we need to, to go there in that regard. In this case, because I think jurisdictionally, this court is empowered to review the final decision of this agency under 42 U.S.C. section 263A, parens K. And Congress in this statute, unlike, unlike many other statutes dealing with Medicare and with other Department of Health and Human Services functions, did not embody any kind of statutory exhaustion requirement. Congress ---- One final preliminary question, then I'll get out of your way. Sure. And I, just because I want to make sure I get an answer to it. The government says that you are not, will not suffer irreparable harm because you've been able to contract out the services. What's your response to that? Well, that's, that sounds easy. I will represent to the Court we've been trying to do that. It's in the declarations. There's record evidence of this. But our efforts have not been successful so far. Okay. That's all I need to say. Okay. And let me just go one step further, Your Honor, because that's a very important practical point. It's not like we're not trying. We're trying. But even if we were able to do that, the quality of the laboratory services for inpatient hospitals, we believe, will be different if we have a contractor who's doing it versus a noncontractor. But let me, let me just move on then quickly. So the statute itself says this Court, not the district court, but this Court has the authority to review final decisions of this agency when it involves a revocation of a CLIA certificate, not talking about a Medicare payment decision, talking about revocation of a CLIA decision, a revocation of a CLIA certificate. The question then, the government will say, well, this decision isn't final. We believe that the provisions of the Administrative Procedure Act, 5 U.S.C. Section 704 and 5 U.S.C. Section 705 answer that question. It is final in this situation for purposes of judicial review because it went into effect on June 15, the administrative law judge's decision. We would agree with the government if, in fact, they had a procedure that you had to exhaust one more step in the administrative appeal process, and in exhausting that step in the administrative appeal process, the administrative law judge's decision would have become inoperative. If that had been the case, we wouldn't be here. But unfortunately, this, what they consider to be the final necessary step in the administrative appeal process, does not cause the administrative law judge's decision to be stayed automatically or to become inoperative. And we think 5 U.S.C. Section 704 specifically says, in that kind of situation, that the decision that went into effect constitutes the final decision for purposes of judicial review. Is there anything in the applicable statute or regulations that would have prevented you from filing an appeal before the review board and asking them for a stay? And there is nothing preventing that. We did that. We filed the admissions. You may not have listened to my question. Oh, I'm sorry. Is there anything to prevent you from filing a petition for review with the review board and at the same time asking for a stay? From this Court? The stay from this Court or from the review board? No, no, no. To going to the body that the government claims you have to go to to exhaust your remedies, the review board. There is nothing in the regulation preventing that, and we did that, Your Honor. You filed a petition for review with the board? We filed a petition for review, and we also, and I'm sure the government will agree with this, and we also asked that agency, which is the appellate division of the Department of Appeals Board, to stay the administrative law judge's decision. They have refused to do that. They've accepted our petition for review, and they are reviewing the administrative law judge's decision. And as a matter of fact, the government has also asked them to review it, but they have refused to stay it. We went to them expressly. Okay. In any event, so that's all about all I need to say at this time, unless Your Honors have any further questions. I'm not sandbagging. I just want to wait and see if the government has something to say that needs to be responded to. Can we hear a sentence or two on why you're likely to prevail on the merits? Okay. Okay. And I'm prepared to do that. I was under the impression it was primarily jurisdiction, but certainly prepared to do that. Two ---- It's a requirement of the showing for you to stay, isn't it? I agree. I agree, Your Honor. I may have ---- Just a sentence or two. Okay. Give us a taste. Okay. And I handled it below. So we believe we will prevail on appeal because the test that was the proficiency testing specimen that was sent to the hospital was forwarded on to an outside laboratory because the hospital treated that proficiency testing specimen just like it would treat other types of specimens of this same type. It did its testing as far as it could do, but for this particular test, once it got to a certain point, it had to refer it out. It is our position that in that situation where the hospital then does not report the other laboratory's results as its own, never intends to use the other laboratory's results to check out anything, never intends to cheat, never intends to cheat on its proficiency testing, that Congress could not have intended that that be a situation that would cause a revocation of the CLIA certificate, that when Congress used the word that you can get in trouble for intentionally referring a proficiency testing specimen and the Secretary has interpreted intentional as willful and knowing that it's something more than a volitional act. It requires some kind of intent to bring about a result that Congress didn't want, and that Congress didn't want people to cheat. Moreover, there is a manual provision. There are two government manual provisions. This Court's used to dealing with those. They're not regulations, but they're guidelines that say that we're going to interpret it this way. We're going to say unless the laboratory who did the referring then reported those results as its own, that's not grounds for a CLIA revocation. I hope I was somewhat clear on that, Your Honor.  We'll hear from the government. Good afternoon, Your Honors. Russell Chittenden on behalf of HHS. I think there are three main jurisdictional impediments to the issuance of an injunction here. The first one is the most... It's a stay. Excuse me, a stay here. The first one we've discussed thoroughly in the papers, both sides, and that is whether this is a final decision which would justify record review jurisdiction. We take the position that it is not, and I can get into that more. I think it's been dealt with fairly substantially in the paper. But the Court raised the second one, and that has not been dealt with as much in the papers. And that is even if we had record review jurisdiction, do we have jurisdiction to issue a stay? Would we have jurisdiction to issue a stay even if we all agreed there was a final decision? Even if after the DAB appeal board issued its final decision, there was no controversy about that, could then this Court, which had original jurisdiction of the record review case, issue a stay? The only authority I've seen from Victor Valli in this case is under the APA 5 U.S.C. Section 705. However, that section in the APA in general talks about its inapplicability if there are adequate remedies at law or if there are schemes set up for review apart from the APA itself, apart from the general rubric of the APA. So are you really arguing that if there's a legitimate appeal in front of this Court that we could not issue a stay in furtherance of our jurisdiction? I think that the jurisdiction of every environmental case presented with these, the logging industry comes in and says we need to, or the environmental groups, depending on who it is, we need to develop. We don't. And we say, all right, pending a review, we'll issue a stay or not issue a stay. Well, we certainly have jurisdiction in those cases. What would be different here? Your Honor, I would simply say that in my perusal of 5 U.S.C. Section 705, we have not found any cases in which that section has been used to issue a stay against Medicare, HHS, CLIA, CMS, any of these. In fact, I'm familiar with cases where injunctions are issued against HHS under the Medicare Act. No, but I'm just talking about ordinary stay pending appeal. It's authorized as part of our jurisdiction. I'm not talking about the APA. Okay. Well, I'm not arguing with you. You may well be correct. I guess then my argument is simply goes back to the fact that we don't have a final decision here. Well, don't back off yet. I just find it somewhat extraordinary. The reason is, is that obviously if in any administrative decision, whether it's immigration or environmental or HHS, if the status quo is going to change during the pendency of an appeal, that's something that can take into consideration if the other factors are met. It seems to me. It may well be. My experience Let me flip it around. I'm sorry to interrupt you again. Is there a case that you found that says we don't have jurisdiction? I have not seen cases where HHS is enjoined under the APA. Right. The only cases I've seen where HHS is enjoined involve a rationale and a type of claim that Victor Valley has not made here. And that is that the essence of their claim is collateral, collateral to the administrative review process and the record review case. Sometimes it's a due process claim or another type of claim that they say is not encompassed in the record review case. It's collateral and there are a series of cases which are not raised in this matter whereby HHS sometimes can be enjoined. But that is not the case here and certainly not the case under CLIA. I have seen no cases enjoining HHS in connection with CLIA. Maybe I haven't looked hard enough. I've tried. No. My question was the opposite. Have you seen a case where it says that a court doesn't have jurisdiction? I have seen it. For example, Your Honor, in the case of Park-Davis v. Califano, 564 F. Second 1200, a Sixth Circuit case in 1977. I'm sorry. I didn't get the slide. I'm sorry. I rushed. 564 F. Second 1200, specifically going on this rationale that the plaintiffs hang their hat on here, and that's APA 5 U.S.C. Section 705, which said that the FDA had a scheme here that precluded that type of injunction being issued against the FDA's actions involving Park-Davis. Again, I have not seen the flip side. I haven't seen anything indicating that HHS, either under Medicare or CLIA, is subject to the APA to the extent that a stay or an injunction can issue. In fact, if we go back to the cases under the APA that talk about its general applicability, we find that if there's an adequate remedy or if there's a comprehensive congressional scheme, that will trump APA, general APA jurisdiction. In this case, for example, the standard of review for a CLIA record review case is different than the APA, and it's set forth in the statute. The standard of review, ultimately, if we get to that point, is that factual findings must be supported by substantial evidence, and legal rulings must be in accordance with law. It's not arbitrary and capricious the way we think of the APA. So, and I'd be happy to get more into the nuts and bolts of why we think this is not a final decision under CLIA and the regulations promulgated. Leaving CLIA aside, though, I mean, it's, if we end up just looking through this under the APA lens, and I realize you don't think we should, but if we do, why isn't the decision of the administrative law judge the operative decision? Because in its final order, it says the decision's effective immediately. That's true, but for one thing, as a practical matter, it could change. It could be the DAB, Departmental Appeals Board, could reverse it. Well, true, but as we sit here today, absent a stage by this Court, the revocation is valid, right? That's correct, but that's something that Congress decided to do when they set up this administrative scheme. The CLIA is an important one. So no matter what the agency does, no matter how ill-founded it is, and whatever the lack of support in the record might be, if an ALJ in this circumstance says, I've heard enough, you're done, you're suspended, your certificate's removed, effective immediately, there's no review. Well, again, there would be a review with the DAB for the possibility of a stay, but in that case, if a condition-level violation is found, and two were found here, yes, that would be the case. The agency action was based upon two events? Well, there was one event, but it led to two separate what they call condition-level deficiencies. So a single event? A single event, Your Honor. What's your client's position with regard to the current state of compliance with applicable regulations by this hospital as we sit here today? As far as I know, and I'm not – as far as I know, it's in compliance. The issue here of – What possible harm can come to the government by the issuance of a stay? Your Honor, if I may talk about the violation, because I think it's – although it's the merits – I didn't ask the question. Tell me the harm that will befall the United States and this particular department if this court were to stay the matter pending a resolution by the review board. The harm will be potential – potential damage to the public by this lab. But you just told me they're in compliance. As far as I know, they're in compliance. I'm not prepared to address that in detail because it's a bit – Okay. Assume they're in compliance. What's the harm? The harm is Congress has determined that when you do this, when you do something like this, refer a sample to a lab. And the only reason anyone ever knows about it is because the lab called HHS. And I would seriously doubt that we would ever know about it had that not happened. Okay. But you've already argued it's non-final decision, so we can't assume it's the fact. We're talking about a stay pending the resolution of that issue. I understand, Your Honor. So you're saying this is so serious that it doesn't even matter if the ALJ is dead wrong, the license has to be revoked, period, and there's no stay. The license – the process is that, yes, for some period of time the license could be revoked and could be reinstated by the DAB, by this court at some point. That can happen. If you're asking me to negate the theoretical possibility that that could happen, I cannot do that. However, the scheme is such that that is contemplated within the scheme. Okay. Let me back up. I think I understand your answer, which is that there's harm because Congress has found there's harm. Is there anything in this record indicating that there's actual harm? I'm talking about record evidence, not the purpose or the scheme or the structure of the statute. It's hard for me to talk about record evidence when we don't have a record. And one of the things that we would ultimately have here is a filed record based upon a final decision. But, however, I will venture to attempt to answer the Court's question. This lab says they violated their own procedure. And their procedure that they swear to is that they don't send out samples to Quest. And, by the way, Mr. Hooper stated that they sent it to Quest because Quest could do a higher level of testing than they could do. Well, the testimony in the record, if we're going to get into that, is that, no, Quest was simply requested to do the very exact same test. Not more testing than the Victor Valley Lab could do, but the exact same testing, which lends itself to the possible interpretation that they were looking for someone to confirm their results or to lead them to the proper result. Again, none of this would have ever come to light had not Quest, the lab they sent this sample to, called CMS. Now they say, we didn't mean to, we didn't intend to violate, but we will never know. We will never know, Your Honor. And that's what this is intended to catch. Well, it did catch it, if you're right. But the question before us today, I hope you understand, is entirely different from the merits. And, well, bear with me for a minute. They have provided affidavits that said that you can suffer a lot of harm, even if it's temporary suspension. And they wouldn't have come to us unless the United States had said, let's stay this pending administrative review. And I guess what I'm trying to struggle with is forgetting, I mean, obviously Congress didn't foresee that it's going to be immediately effective without a stay in every case, because, as you said, a stay can be issued by the agency. So we know stays are available administratively. They may be available here. What's wrong with a stay? I mean, on the basis of this record. I really don't want an answer about the importance of the statute, because I get that argument. But I'm struggling with the United States' position based on actual harm on the ground. Okay. Your Honor, in the Medicare cases, and we analogize because there aren't very many CLIA cases, the courts, including this Court, have held that in the case of providers, hospitals, skilled nursing facilities, economic harm does not constitute irreparable harm for purposes of a stay. And under the Medicare Act, the rationale is that the providers are not the beneficiary of the Medicare Act. It's the patients. And so economic harm to providers does not provide irreparable harm for purposes of issuing any injunction. It's true. But in this particular case, because it may involve collateral consequences, they've alleged through the affidavits that they may have to shut down, which would deny care to patients. And that is a different sort of harm than sheer economic harm to the provider. You're correct, Your Honor, but that is always the argument. And I've had cases where economic harm is then bootstrapped, if you will, into potential harm to Medicare beneficiaries, and it simply does not fly as a matter of law. Well, I get that, but this is a different case. Well, you're right, Your Honor, and I would be extremely surprised if this hospital ever shuts down, regardless of what happens here. I think that Victor Valley is well prepared to contract out for the amount of time they need to and then start their lab back up after the penalty has been set. But where's your evidence in the record on that? You've asserted that. They say, no, we haven't been able to contract out. I'm really trying to help you out here. I'm just trying to understand the United States' practical position, aside from philosophy and why this hospital should be shut down. They are able to contract out. They're just unwilling to do it because they think they're going to win here, to put it bluntly. Judge Levy has a question. I want to call your attention to page 7 of the ALJ's findings of fact number 10. And it says, by sending proficiency test samples to Quest, as it would with regular patient test samples, Victor Valley intended to comply with regulation, which requires testing proficiency testing samples, the same as those of regular patient workload. Now, no matter what you think the truth is, for our purposes here today, that's the absolute truth, that what they did was in accord with what they always do and what the regulation requires that they do, and they did it with an intent to comply with the regulation. Now, in doing so, in complying with that mandatory regulation, you say they violated another one for which they are to be penalized. Your Honor. I'm finished. I'm sorry, Your Honor. Is that true? The part of it is true that that finding obviously is there, but the part that this would create a rock-and-a-hard-place situation, if you will, whereby there was no way they could comply is not correct. What they had to do, and that's on the record as well, and the ALJ also found this, by the way, is that they had to test to their capacity, to their ability, and present the results, which they ultimately did. So there's no either-or here, that there's two conflicting courses. Well, they are, in fact, certified beyond their capacity, are they not? They are, Your Honor. And so when they're certified beyond their capacity and then they're sent a sample that says, you test this for whatever it was, bacteria or whatever it was, it was a specific test, right? I believe so, Your Honor. Now, what are they to do? Are they to say, take your sample back, we won't touch it because we don't do that, or you've licensed us to do things that we can't do and you're asking us to do those things and we just can't do it? Now, if they had been left alone, we can speculate as to what the result might have been. It might have been that they said, we tested this to this level and we come to these results, and they tested that beyond that, and here are their results, and this is what the patient would know if it was a patient sample, and that's the way we treat our patients and that's in conformity with every goal of this Improvement Act. We don't know. Your Honor, the only thing I would say is that, according to the record, again, Quest Lab, the lab the specimen was referred to, was not to test beyond what Victor Valli was doing, but merely to do the same test, and if that's the case, then that rationale becomes somewhat less compelling. I would also say that the same ALJ that found- Well, now, if this had been a sample from a patient, what should they have done? They should have tested to their capacity and, if necessary, referred it to someone else, but- To someone else, and that someone else normally is- Here, you test to your capacity. There is no patient. This is a test, and that will be the result. You will be judged based upon the test you're able to perform, as they always had been. Okay. I take it that it's well-documented, then, in the department, as to what the capacity of every laboratory is. That would be speculative. Well, what if you got a test request and you said, well, even though I'm licensed to do 100 percent, I really can only do 25, and I do 25, and now I send it back to you. How do you know that they're not just rejecting the opportunity to be tested? Your Honor, the only thing I can say is that the protocol here with this mandatory testing, which they had adhered to, apparently, at least as far as we know, is that they test- Question. Don't keep going. What you can test better be right. In other words, no one's going to say, well, why didn't you do this or that? All right. Now, as I see it, we're either under the Administrative Procedures Act, or we're under Medicare, right? Medicaid or Medicare or CLIA, I would say. All right. All right. Social Security. Okay. Or we're under some statutory scheme unique to this act. Do you know which one we're under? We're under CLIA, which incorporates the regulations whereby claims under the Medicare Act are administratively reviewed. So it's not enough to look at the act. We have to look also to the- We would look at the act. We would look at the CLIA regulations, CFR 473, which refer to these other acts. But we don't have to touch the APA. I do not believe so, Your Honor. And then one more further question. In your response to the order to show cause, you refer to this as this proceeding as an original proceeding arising from a decision of the Department of Appeals Board of the United States Department of Health and Human Services. Now, is this a decision of the appeals board? I'm not sure what the Court's referring to, but that sounds wrong to me. Well, I'm referring to your response to the Petitioner's response to the Court's order to show cause. That's what you title it. Is the decision of the ALJ the decision of the board? It is not, Your Honor. So this is an error. If I'm understanding it correctly, yes. Well, that's the title. That would ultimately be the basis for jurisdiction of the Court. We do not think it's progressed to that point. Okay. You understand the lingo is sometimes hard to follow. I do appreciate that, Your Honor. I appreciate that. Thank you very much. Thank you, Your Honor. Let me ask just a couple more questions, if you might. It seems to me we've got a few options here. One, I believe there is some precedent. We could issue a stay and hold the appeal in abeyance until the administrative procedure is completed. We could deny without prejudice to renewal. We could. At least there's some precedent in other cases. We could declare grant a stay and under the doctrine of primary jurisdiction transfer this appeal to the agency. I guess those are options, as you see them. I would never attempt to limit a court's options, but I suppose those would be. We would. Let me just say this so that it's known. We will work with Victor Valley if there is no stay in terms of timing, in terms of their ability to get a contractor in there. We will not be unreasonable. This hospital, well, I can't guarantee anything, but this hospital is not going anywhere. Well, you say that, but, I mean, the only record we have indicates otherwise. So if it were true that everything they say will happen, that they're going to shut down, I assume the government doesn't want that to happen. Of course not, Your Honor. Okay. So then perhaps is this appropriate for our circuit mediators to work with you if we decide that's appropriate, either if we grant a stay, to have a condition stay, or else to work out a deal so that we accomplish whatever somebody seems to want here, which is to keep the hospital open and keep them, in your view, properly chastised or whatever you want to say? I'm just throwing that out there. It may well be, Your Honor. I'm probably not empowered to make that choice now. No. I'm just giving you a quick reaction. It would seem to be perhaps in line with reasonableness of the parties.  Judge Hawkins, you have some more questions. No, I'm fine. Thank you, Judge Levy. Thank you very much. Thank you, Your Honor. If I may just touch on a few loose ends here, Your Honor. Judge Levy, I think, characterized it completely correct. I was the lawyer who handled the case at the administrative hearing level, and I will represent to the Court that that's exactly what happened, that they treated this just like they would treat a patient specimen. And Quest may have had its own protocols, but we only did what we could do, and we only reported to the proficiency testing people what we did. And then Our Lady very transparently put, for the name of the patient, proficiency testing. There was no attempt here to fool anyone. And there was no harm, and there's no harm in this record. Also, Your Honors, I believe we are under the CLIA Act. We are not, notwithstanding how much the government would like to be under the unique Medicare jurisdictional limits, we are under the CLIA Act. I think that's what he said. He said CLIA, I believe, but he also ties CLIA to Medicare through regulations, and we disagree with that. There are some administrative regulations that refer to hearing procedures of the Medicare program, but that doesn't make this a Medicare jurisdictional case. So I think that that's clearly a distinction. We don't want to get into those lines of cases that seem to say there are jurisdictional limits here, because those jurisdictional limits aren't found in the statute we're looking at here. Let's see if there's, I think that that is all of the points I wanted to make. There is no risk of harm. I will represent again to the Court. They've been recently surveyed, Victor Valley, and they have passed all of the tests. Again, we wouldn't be here if we didn't have a reason to be here and if we had gotten a stay. If this Court doesn't grant the stay, we cannot represent that this hospital is going to be able to survive. So we would submit on that, Your Honor. And I gather if we were to refer this to our circuit mediators to work out a deal, if possible, you have no objection to that. Well, I have no objection. I'm pessimistic. I'm not talking about something that will settle the case, but will perhaps work out an arrangement or stipulation by which each party can be satisfied that the status quo will be preserved during the appeal. We certainly would want the status quo maintained. And if that could be done, we would be more than happy to do so. The folks who were responsible for this alleged deficiency have been long gone for three years. So we have a brand-new administration in there. So we've worked. And, I mean, I'm not accusing HHS of being devious. We've tried to work things out. But we haven't been able to, so I just hate you. You doubt. You are pessimistic. Let me ask you one final question. I know you have indicated you went to the agency for a stay and were declined. Is that a matter of written record? I can – I thought that would be part of the record. Yes or no. Is it a matter of written record? It is written. It is in writing. I don't think it's in the declaration. Yes, it's definitely at the administrative agency and counsel. No, no. And did the agency provide reasons for declining or was it just a one sentence? They denied. All right. Summarily denied. All right. I'm sorry, Your Honor. I wasn't trying to be acute about that. Thank you. Thank you all for your arguments. The case just will be submitted for decision. And we are in recess.
judges: Leavy, Hawkins, Thomas